IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § § § | |
| V. | § § § § § | A-13-CV-01036 ML |
| ROBERT A. HELMS, ET AL., | § § § | |
| Defendants, | § § § | |
| and | § § § | |
| WILLIAM L. BARLOW and GLOBAL CAPITAL VENTURES, LLC, | § § § § | |
| Relief Defendants, solely for the purpose of equitable relief. | § § | |

**ORDER DENYING MOTION FOR RECONSIDERATION**

On this day the Court considered Defendants [*sic*] Motion to Reconsider Summary Judgment Order & Dispositive Motion, [Dkt. #287], filed October 2, 2015 by Defendant, Roland Barrera, the Corrected (Redacted) version of this Motion [Dkt. #289] filed October 9, 2015, and Plaintiff's Response in Opposition to Defendants' Motion for Reconsideration [Dkt. #288], filed October 7, 2015 in this matter.

**I.    BACKGROUND**

The SEC brought this civil suit against multiple defendants, alleging that over 100 investors were duped into a large-scale Ponzi scheme. On August 21, 2015, this Court entered summary judgment against some of those defendants, and in particular against Roland Barrera.

1

("Summary Judgment Order," [Dkt. #275]). Barrera had received a commission of over $200,000 for his role in soliciting a $3,050,000 investment from a company run by his personal friend, Jamie Moore. Based on his conduct in soliciting this investment and failing to disclose the size of his commission, the Court found Barrera liable for violations of the Exchange Act's Broker-Dealer and Anti-fraud provisions.

Barrera, although he filed an answer and sat for deposition in this matter, filed no response to the SEC's motion for summary judgment against him. After the entry of the Summary Judgment Order, however, Barrera moved this Court for reconsideration. Barrera asserts he was not an unregistered broker, because he was only tangentially involved in one securities transaction, and he never engaged in securities fraud because he never made any knowing misrepresentations to investors.

## II.   STANDARD OF REVIEW

As a threshold matter, the Court notes the standard for reconsideration on an interlocutory order such as this one is not, as the SEC suggests, set out by Federal Rule of Civil Procedure 59(e) or 60(b). Because the Court's August 21, 2015 Summary Judgment Order [Dkt. #275] was not a final order within the meaning of 28 U.S.C. § 1291, this Court retains plenary power to review its decision and "'afford such relief . . . as justice requires.'" *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014) (quoting *Zimzores v. Veterans Admin.*, 778 F.2d 264, 266 (5th Cir. 1985)). The Court therefore considers Barrera's arguments and evidence under the ordinary standard applicable to a nonmovant resisting a motion for summary judgment. *Zimzores*, 778 F.2d at 267 (citing *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985)).

The summary judgment standard requires the moving party to bear the initial burden of demonstrating that judgment is appropriate as a matter of law. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 484 (5th Cir. 2014). For the reasons outlined in the Court's August 21, 2015 Order, the SEC has met this initial burden. *See generally* Summary Judgment Order [Dkt. #275]. In opposing summary judgment, Barrera now bears the burden to establish the existence of a genuine issue of material fact for trial. *Celtic Marine Corp. v. James C. Justice Co., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014). The Court will view the summary judgment evidence in the light most favorable to Barrera as the nonmovant. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013).

### III. ANALYSIS

Even under this generous standard, the argument and evidence presented by Barrera in opposition to the SEC's motion for summary judgment fails to raise any issue of material fact with regard to Barrera's liability. *See generally* Motion and Corrected Motion to Reconsider [Dkt. #287, 289].

#### A. Barrera Acted as an Unregistered Broker

The Court previously found Barrera violated the Broker Provisions of the Exchange Act by soliciting the investment of Lacova Capital LLC ("Lacova") in Vendetta Royalty Partners ("Vendetta") and by acting as a link between Lacova's agent, Jamie Moore, and Vendetta's agent, Deven Sellers, during the negotiation of the investment. Summary Judgment Order [Dkt #275] at 13-15, 31-34. In his Motion to Reconsider, Barrera admits he was involved in soliciting Moore to invest Lacova's money in Vendetta. He nevertheless argues he should not be considered an unregistered broker because he was only involved in one transaction. Mot. Reconsider [Dkt #287, 289] at 2.

In support of this argument, Barrera offers no new evidence to rebut the emails and deposition testimony previously submitted by the SEC.  This previously submitted evidence establishes: (a) Sellers offered to pay Barrera half of what Sellers made in commissions from Barrera's introductions to potential investors; (b) Barrera set up a meeting between Sellers and Moore to discuss Moore/Lacova's potential investment in Vendetta; (c) Sellers subsequently copied Barrera on emails to Moore about Vendetta and on an email solicitation offering Moore a second investment opportunity, the "Vesta" portfolio (in which Moore/Vendetta never invested); and (d) Barrera actually received over $200,000 as a result of Moore/Lacova's investment in Vendetta.  *See* Summary Judgment Order at 13-17 and citations to record evidence therein.  The Court previously found, based on this evidence, that Barrera should be held liable as an unregistered broker because, "[a]lthough it could be argued that Barrera was not necessarily participating in securities transactions 'regularly,' he was hired by Sellers to conduct these types of negotiations 'regularly.'" *Id.* at 33.  Barrera's unsupported argument to the contrary does not undercut the Court's analysis because, "as a general matter, 'unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment.'" *Serna v. Law Office of Joseph Onwuteaka, P.C.*, No. 14-20574, 2015 U.S App. LEXIS 9432, * 15 (5th Cir. June 5, 2015) (quoting *Galindo*, 754 F.2d at 1216).

Additionally and in the alternative, the Court previously found that Barrera's "central role in securing a hefty $3,050,000.00 investment from Lacova" was enough to support unregistered broker liability.  *Id.* (citing *SEC v. Kenton Captial, Ltd.,* 69 F. Supp. 2d 1, 12-13 (D.D.C. 1998)).  Barrera does not dispute that he introduced Moore to Sellers and received a commission in excess of $200,000 for Moore/Lacova's investment in Vendetta.  Mot. Reconsider [Dkt. #287,

289] at 2-6; *see also* Mot. Summ. J. [Dkt. # 260] Ex. 2, Barrera Deposition at 40. Barrera does assert that his role was not ongoing or central, in that he did not increase his interactions with Moore for the purposes of selling the Vendetta securities. Mot. Reconsider [Dkt. #287, 289] at 2-6. He attaches evidence, such as Facebook pages, supporting his contention that his interactions with Moore were the product of a longstanding friendship, not a business solicitation effort. *Id.* at Ex. B.

Essentially, Barrera contends he was paid a mere "finder's fee" and that his ongoing involvement with Moore was a function of their friendship, not an effort to close the Vendetta deal. While a person who acts as a mere "finder in bringing together the parties to transactions" may not be required to register as a broker/dealer, this exception is very limited. *Cornhusker Energy Lexingon, LLC v. Prospect St. Ventures*, No. 8:04CV586, 2006 U.S. Dist. LEXIS 68959, *18-19 (D. Neb. Sept. 12, 2006). A "finder" must register as a broker dealer if he is "performing the functions of a broker-dealer." *Id.* These functions, among other things, include involvement in negotiations. *Id.* Such involvement may include "answer[ing] questions . . . or provid[ing] assistance to customers in resolving problems with a particular broker-dealer or with respect to particular transactions with a participating broker-dealer" and "charg[ing] fees . . . based, directly or indirectly, on . . . the size, value, or occurrence of any securities transactions." *Globaltec Solutions, LLP, and CommandTRADE, LP*, 2005 SEC No-Act. LEXIS 868 (Dec. 28, 2005). In particular, "[t]ransaction-based compensation, or commissions are one of the hallmarks of being a broker-dealer." *Cornhusker Energy*, 2006 U.S. Dist. LEXIS 68959 at *19 (quoting *John Woods. Loofbourrow Associates, Inc*., 2006 SEC No-Act. LEXIS 523 (June 29, 2006)).

The undisputed facts in this case establish Barrera was not merely paid a "finders' fee" for providing Moore as an investment lead. Barrera was paid a commission when Moore/Lacova

5

actually invested in Vendetta.[1]  Barrera set up and attended the meeting introducing Moore to Sellers and the Vendetta offering.  Mot. Summ. J. [Dkt. # 260] Ex. 2, Barrera Deposition at 40.  This was not the sum total of his involvement, however.  Moore and Barrera exchanged multiple email communications concerning the Vendetta investment.  Mot. Reconsider [Dkt. #287, 289], Ex. C.  Barrera stated, in deposition, that Moore "talked about it [the Vendetta investment] every time I seen him [*sic*]" after that first meeting.  *Id.* at 86-87.  On at least one occasion, Barrera conveyed Moore's questions about the investment to Sellers.  *Id.* at 85-86.  Ultimately, after the investment deal closed, Barrera gave Moore at least $5,000 in cash from the proceeds of Barrera's commission.  *Id.* at 71-72.  These undisputed facts establish Barrera did more than simply introduce Moore to Sellers—he capitalized on his friendship with Moore to solicit and help close the investment deal between Lacova and Vendetta.   Therefore, while he may be a "finder," he also performed the functions of a broker and thereby breached the Broker Provisions of the Exchange Act.  *Cornhusker Energy*, 2006 U.S. Dist. LEXIS 68959 at *19.

### B.   Barrera Fraudulently Concealed the Amount of His Commission

The Court previously granted summary judgment on Barrera's fraud liability under the Exchange Act.  Summary Judgment Order [Dkt. #275] at 15-17, 29-31.  Barrera seeks reconsideration of this issue on the grounds that he had no actual knowledge of the terms of the Vendetta investment deal or the relationship between his commission and the investment deal.  Mot. Reconsider [Dkt. #287, 289] at 2-6.

In his deposition, however, Barrera admitted that Moore asked him after the initial meeting whether Barrera "was going to get anything" in connection with a Lacova investment.

---

[1] Barrera argues, in the alternative, that he is entitled to the protection of the "safe harbor" for Associated Persons of an Issuer set out in 17 C.F.R § 240.3a4-1.  A prerequisite for the application of the safe harbor, however, is that the associated person is "not compensated by the payment of commissions based either directly or indirectly on transactions in securities." *Id.*  As Barrerra received a commission of over $200,000 for the sale of the Vendetta investment to Lacova, he is not entitled to invoke the safe harbor provisions. *Id.*

Mot. Summ. J. [Dkt. #260] at Ex. 2, Barrera Depo. at 65-66.  Barrera considered this information "none of his business" and replied that Sellers "was going to take care of [him]" without disclosing Sellers' promise to split any commission received on the deal.  *Id.*  Barrera further testified that he never told Moore the amount of his commission after he received it.  *Id.* at 87-88.

Barrera, as a broker—even an unregistered broker—had a fiduciary duty to the investor to disclose material facts.  *SEC v. Randy,* 38 F. Supp. 2d 657, 670 N.D. Ill. 1999); *Dirks v. SEC*, 463 U.S. 646, 658 (1983).  Barrera's failure to read the terms of the securities offering is, at best, reckless disregard for this duty.  *Randy*, 38 F. Supp. 2d at 670.  Furthermore, Barrera's conduct in withholding information about the structure and amount of his compensation, even after Moore asked him a direct question about it, amounts to an intentional breach of this fiduciary duty.  Mot. Summ. J. Ex. 2, Barrera Depo at 65-66; *id.* at 85-88; *see also Kaufman & Enzer Joint Venture v. Dedman*, 680 F. Supp. 805, 812 (W.D. La. 1987) (finding "commission arrangement" material).  Thus, the argument and evidence presented in Barrera's Motion to Reconsider [Dkt. #287, 289] cannot raise a material fact issue as to whether Barrera violated the Antifraud Provisions of the Exchange Act by failing to disclose the structure and amount of his commission to Moore.

## III.  CONCLUSION

Barrera's Motion to Reconsider [Dkt. #287, 289] does not raise a material fact issue as to his liability in this case.  Therefore, the Court reaffirms its August 21, 2015 grant of summary judgment against him.

For the reasons stated above,

IT IS ORDERED that the Motion to Reconsider [Dkt. #287, 289] is DENIED.

SIGNED on October 20, 2015.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE